UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANA S. De FLETES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | No. ED CV 17-2179-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

I.

**PROCEEDINGS**

Plaintiff filed this action on October 24, 2017, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on November 14, 2017, and November 27, 2017. Pursuant to the

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on August 24, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on February 1, 1963. [Administrative Record ("AR") at 36, 450.] She has past relevant work experience as an order picker, as a marker, and as a box folding machine operator. [AR at 36, 53, 65.]

On November 12, 2013, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since October 20, 2011. [AR at 27, 450-56.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 229-49.] A hearing was held on February 24, 2016, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 72-110.] A vocational expert ("VE") also testified. [AR at 96-107.] On March 21, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from October 20, 2011, the alleged onset date, through March 21, 2016, the date of the decision. [AR at 194-205.] Plaintiff requested review of the ALJ's decision by the Appeals Council and on August 2, 2016, the Appeals Council granted the request for review, and remanded the matter for further administrative proceedings. [AR at 210-13.]

On April 11, 2017, a remand hearing was held before the same ALJ, at which time plaintiff again appeared represented by an attorney and testified on her own behalf, with the assistance of a Spanish interpreter. [AR at 45-71.] A different VE also testified. [AR at 53, 63-69.] On June 15, 2017, the ALJ issued a decision again concluding that plaintiff was not under a disability from October 20, 2011, the alleged onset date, through June 15, 2017, the date of the decision. [AR at 27-38.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

## III.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 20, 2011, the alleged onset date.[2] [AR at 30.] At step two, the ALJ concluded that plaintiff has the severe impairments of fibromyalgia; irritable bowel syndrome; tendinosis, bilateral knees; osteoarthritis; degenerative disc disease, cervical spine; and major depressive disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 31.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [C]an lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight hour workday, alternating between sitting/standing no more often than every 30 minutes; stand and/or walk for six hours out of an eight hour workday; push/pull within the weight limitations; frequently operate hand controls, bilaterally; frequently reach overhead, bilaterally; frequently handle items, bilaterally; frequently finger, bilaterally; occasionally climb ramps and stairs; occasionally balance, stoop, kneel and crouch; and occasionally be exposed to extreme cold. [She] is precluded from climbing ladders, ropes, or scaffolds; crawling; and working at unprotected heights or around moving mechanical parts. Additionally, [she] is limited to simple, routine tasks; occasionally interacting with co-workers; and occasionally interacting with the public.

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. [AR at 30.] She also noted that it had previously been determined that plaintiff "is the unmarried widow of the deceased insured worker and has attained the age of 50," and that she met the non-disability requirements for disabled widow's benefits set forth in the Social Security Act. [Id.] She also found that the "prescribed period [for disabled widow's benefits] ends on September 30, 2020." (Id.).

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[AR at 32.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as an order picker, as a marker, and as a box folding machine operator. [AR at 36, 67.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "assembler small parts" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 706.684-022), as an "assembler electrical accessories" (DOT No. 729.687-010), and as an "assembler plastics" (DOT No. 712.687-010). [AR at 37, 67.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 20, 2011, through June 15, 2017, the date of the decision. [AR at 38.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.  ANALYSIS**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4-16.]

The ALJ summarized plaintiff's testimony as follows:

> [She] testified she was unable to work because of worsening of her condition. She alleged physical and mental issues, such as back and knee problems, inflammatory bowel disease, and depression. She described being able to lift a gallon of milk, stand for 20 minutes, walk for 15 to 20 minutes, and sit for 20 minutes. [She] reported having fatigue. She stated she used the bathroom five to six times a night. She indicated she used medications, which caused side effects such as drowsiness and dizziness. She testified she lived with her two teenage daughters. She stated her sister occasionally visited her and took her to the market.
>
> [In the Adult Function Report] completed by [plaintiff] dated February 12, 2015 . . . [she] alleged difficulty with nearly all physical abilities. She noted she also had trouble with memory, concentration, and completing tasks. She stated she was only able to lift two to four pounds. However, [she] indicated she was able to prepare

|   | simple meals, do laundry slowly, drive, and shop in the stores. |
|---|---|
| [AR at 33.] | |

The ALJ discounted plaintiff's subjective symptom testimony as follows:

> I find [plaintiff's] allegations concerning the intensity, persistence, and limiting effects of her symptoms are inconsistent with the medical record. While the record showed [plaintiff] was diagnosed with fibromyalgia, [her] treatment was conservative. It was limited to exercise and medication. Furthermore, [she] has also described a level of everyday activities that was consistent with the residual functional capacity assessed herein. [She] acknowledged she was able to do some household chores, attend appointments, exercise, and travel internationally.

[Id.]

On March 28, 2016, prior to the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759

F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 32-35], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following: (1) plaintiff's

subjective complaints were not supported by the objective evidence; (2) plaintiff's treatment was conservative; and (3) plaintiff's daily activities as she described them were "consistent with the residual functional capacity assessed" by the ALJ. [AR at 33.]

**1. Objective Evidence**

The ALJ found that plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms" were inconsistent with the medical record. [Id.] Although the ALJ generally summarized the medical evidence from May 2011 through January 2017, she did not then note the specific objective evidence that does not support plaintiff's subjective symptom allegations. [AR at 33-35.] Plaintiff argues that the ALJ answered the wrong question "in articulating that the degree of limitation established by the objective medical evidence does not support [plaintiff's] descriptions; rather, once the presence of a severe medical impairment likely to produce subjective limitations is established (as in this case), the true question is whether there is [sic] any clear and convincing reasons for rejecting [plaintiff's] testimony." [JS at 10 (citations omitted).] She argues that the ALJ failed to articulate *any* rationale sufficient to demonstrate that plaintiff was less than credible. [Id.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity

assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ stated her conclusion that plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the objective medical evidence of record and other evidence in the record." [AR at 34.] She then summarized the medical evidence, occasionally mentioning some aspects of plaintiff's testimony, but without actually tying it to the record evidence. [See AR at 34-36.] For instance, the ALJ stated the following:

> Treatment notes from October 30, 2014 indicated [plaintiff] declined an interpreter and was comfortable speaking in English. Examination findings from February 24, 2015 were unremarkable save for tenderness in [her] clavicle and knees. On March 9, 2015, [she] had tenderness to palpation bilateral pes anserinus area and along bilateral clavicular line. [She] acknowledged she exercised for 30 minutes four days a week at a moderate to strenuous level. [¶] The record dated July 22, 2015 indicated [she] returned from a trip to Mexico five days prior. On August 25, 2015, [she] again declined an interpreter. She was in no distress, but appeared fatigued.

[AR at 34 (citations omitted).] However, the "ALJ must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added); Brown-Hunter, 806 F.3d at 493. Here, the ALJ did not identify the testimony she was discounting and "link that testimony to the particular parts of the record" supporting her determination. Brown-Hunter, 806 F.3d at 494. Indeed, the ALJ's running narrative regarding plaintiff's medical records, randomly interspersed with plaintiff's purported daily activities, while thorough, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony. Even assuming this was a specific, clear and convincing reason

for discounting plaintiff's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. As seen below, those other grounds are insufficient as well.

2.     **Conservative Treatment History**

The ALJ also discounted plaintiff's allegations because her treatment for her fibromyalgia was "limited to exercise and medication." [AR at 33.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Here, however, the ALJ failed to articulate what, if any, treatment other than exercise and medication was currently recommended or available for plaintiff's fibromyalgia[5] and other physical

---

[5] Fibromyalgia is a syndrome that "is poorly understood within much of the medical community." Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted). Significantly, there is no known cause or cure, and fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Id. at 590; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective."). Courts have noted that there are no laboratory or diagnostic tests that can confirm the presence of fibromyalgia. Benecke, 379 F.3d at 590 (citations omitted); Sarchet, 78 F.3d at 306; Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003). Hence, fibromyalgia is often diagnosed by eliminating other possible conditions and confirming the presence of the disease's symptoms: widespread pain existing for at least three months, fatigue, disturbed sleep, stiffness, and tenderness in at least eleven of eighteen specified sites ("trigger points") on the body. Brosnahan, 336 F.3d at 672 n.1 ("[d]iagnosis [of fibromyalgia] is usually made after
(continued...)

impairments. She points to no evidence in the record that anything else had been recommended for plaintiff by a physician or was warranted for her conditions. Additionally, the ALJ failed to point to anything in the record to show that any specific treatment, other than the medication plaintiff was receiving and the exercise that she was doing, is a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 3. Daily Activities

The ALJ found that plaintiff "described a level of everyday activities that was consistent with the residual functional capacity assessed herein,"[6] as she "acknowledged she was able to do some household chores, attend appointments, exercise, and travel internationally." [AR at 33.]

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse

---

[5](...continued)
eliminating other conditions"); Preston v. Sec'y of Health and Human Servs., 854 F.2d 815, 818 (6th Cir. 1998) ("no objective tests . . . can conclusively confirm [fibromyalgia]"); Rollins, 261 F.3d at 855 (listing fibromyalgia's symptoms (quoting Sarchet, 78 F.3d at 306)).

[6] In Laborin, the Ninth Circuit found that the ALJ's "boilerplate" language discrediting the claimant's testimony because it is inconsistent with the RFC indicates that the ALJ "did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do.'" Laborin, 867 F.3d at 1153 (citations omitted; alteration in original). Here, the ALJ's language stating that plaintiff's description of her "level of everyday activities . . . was consistent with the [RFC] assessed herein," also appears to indicate that the ALJ may not have properly incorporated plaintiff's testimony regarding her symptoms and limitations *into* the RFC. See id. at 1153 n.4 (stating that an ALJ "cannot . . . properly evaluate the claimant's credibility based on a predetermined RFC").

credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim, 763 F.3d at 1165).

Plaintiff contends that nothing in her testimony provided any indication that she is capable of performing anything other than a few basic daily activities "and certainly not what is required of substantial gainful work" for "8 hours a day, for 5 days a week, or an equivalent work schedule." [JS at 11 (citing SSR 96-8p).] She notes that her description of her activity level "is far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." [JS at 12.]

Here, the ALJ specifically identified the few daily activities that she found demonstrated that plaintiff was able to perform work within the RFC determination: "some household chores, attend appointments, exercise, and travel internationally," and "prepare simple meals, do laundry slowly, drive, and shop in the stores." [AR at 33.] However, the amount of involvement plaintiff described in these activities was minimal. For instance, she testified at the hearing and/or in her Adult Function Report that she does some chores around the house when she has energy; she does not cook anything but simple meals such as sandwiches, frozen dinners, or soups; that sometimes she cleans dishes, and does laundry "little by little," but takes breaks when doing so, and that she lies down after doing such tasks. [See, e.g., AR at 57-59, 513-15; see also AR at 80-81, 84.] With regard to her exercise, plaintiff told her treating physician on May 15, 2015, that she "exercises 30 minutes 4 days per week at a moderate or strenuous level." [AR at 1229.] There was no testimony at the April 11, 2017, hearing regarding her then-current level of exercise. Moreover, although plaintiff reported to her treating physicians on July 22, 2015, that she had "returned from a trip to [M]exico five days ago," and on November 17, 2016, told her treating provider that she had "checked her sugar in Mexico (using her mother's glucometer)" [AR at 1258, 1613], there is absolutely no testimony or other evidence regarding this "international travel" that would support a conclusion that plaintiff could perform substantial gainful work. Neither does the ALJ explain how plaintiff's low level of activity (including her previously-described ability to exercise for a grand total of two hours per week) describes a person capable of engaging in even

13

basic work activity, or how it is incompatible with the severity of symptoms alleged by plaintiff.[7] [AR at 33.] Additionally, plaintiff's reported level of activity clearly *does* reflect that she has difficulties in performing her daily activities.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

B. **CONCLUSION**

The Court finds the ALJ's subjective symptom testimony determination to be virtually indistinguishable from the subjective symptom testimony determination rejected by the Ninth Circuit in Brown-Hunter. As in Brown-Hunter, the ALJ here "simply stated her . . . conclusion [regarding plaintiff's subjective symptom testimony] and then summarized the medical evidence supporting her RFC determination." Brown-Hunter, 806 F.3d at 494. Although the ALJ also briefly summarized plaintiff's daily activities, she did not then identify the testimony she found not credible, and "link that testimony to the particular parts of the record" supporting her non-credibility determination. Id. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id.

Remand is warranted on this issue.

VI.

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or

---

[7] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. The ALJ shall then reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[8]

/
/
/
/
/
/
/
/
/

---

[8] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

15

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 21, 2018

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE